UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONOCOPHILLIPS COMPANY, a Delaware corporation,<br><br>                Plaintiff,<br><br>     v.<br><br>EVER GONZALEZ, an individual, d/b/a GONZALEZ AUTOMOTIVE, et al., and GONZALEZ AUTOMOTIVE, LLC,<br><br>                Defendants. | Case No.: 5:12-cv-00576-LHK<br><br>ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

      Plaintiff ConocoPhillips Company ("Plaintiff") filed this *ex parte* application for a temporary restraining order ("TRO") and preliminary injunction against Defendant Ever Gonzalez ("Gonzalez"), doing business as Gonzalez Automotive, et al., and Gonzalez Automotive, LLC (collectively "Defendants"). Pl. ConocoPhillips Co.'s Appl. for TRO and Prelim. Inj. and Mem. and P. & A. ("TRO Appl."), ECF No. 4. Plaintiff provided Defendants with notice that Plaintiff had filed its complaint and *ex parte* application in accordance with Federal Rule of Civil Procedure 65(b)(1)(B). *See* ECF Nos. 11, 12. Defendants have not filed an opposition. For the reasons set forth below, Plaintiff's *ex parte* application is DENIED without prejudice.

### I. BACKGROUND FACTS

      Plaintiff is an integrated company that refines and markets motor fuels in California under the "76" trademark ("76 Marks"). *See* TRO Appl. at 1. Defendants operate several gasoline

1
Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   stations and automotive repair centers in Marin County, California, as well as various internet

2   websites.  *Id.*  Defendants are neither franchisees nor licensees of Plaintiff.  *Id.*

3         After a local employee of Plaintiff discovered the 76 Marks on display at two of

4   Defendants' shops, Plaintiff sent a cease and desist letter to Gonzalez on June 27, 2011, to inform

5   Gonzalez that he was engaging in trademark infringement.  *Id.* at 3.  The letter requested that

6   Gonzalez discontinue the use of the 76 Marks in Gonzalez's shops and website.  *Id.*  The letter

7   demanded that Gonzalez confirm in writing by July 5, 2011, that Gonzalez would cease all use of

8   Plaintiff's intellectual property.  *Id.* at 4.  The letter also informed Gonzalez that Plaintiff would

9   take legal action if Plaintiff did not receive Gonzalez's response by July 5, 2011.  Plaintiff did not

10  receive written confirmation from Gonzalez by July 5, 2011.  *Id.*

11        On September 13, 2011, Craig Stone ("Stone"), Plaintiff's employee, spoke to Gonzalez,

12  who informed Stone that Gonzalez had ceased all use of the 76 Marks.  *Id.*  Per Stone's request,

13  Gonzalez agreed to provide Stone with photographs confirming the cessation of such use by

14  September 16, 2011.  Gonzalez also agreed to disable Defendants' website,

15  www.76automotive.com, by September 16, 2011.  *Id.*  On September 14, 2011, Stone sent

16  Gonzalez an email confirming and summarizing the conversation from the previous day.  *Id.*

17  Gonzalez did not comply with Stone's requests by the agreed-upon date.  *Id.*

18        Stone and Gonzalez communicated by telephone and email several times in September and

19  October 2011.  *Id.*  On September 19, 2011, Gonzale| informed Stone by email that Gonzalez was

20  working on complying with Stone's request and asked for Stone's patience.  *Id.* at 5.  On

21  September 20, 2011, Gonzalez informed Stone by email that Gonzalez would shut down

22  www.76automotive.com.  *Id.*  On September 23, 2011, Gonzalez informed Stone by email that

23  Gonzalez had cancelled the purported web domain and forwarded a purported confirmation of the

24  cancellation.  *Id.* at 5.  However, Gonzalez did not provide Stone with the requested photographs of

25  Defendants' shops confirming the removal of the 76 Marks.  *Id.*

26        As of December 2011, Defendants continued to use and display the 76 Marks in their shops

27  and registered a new web domain, www.gonzalezautomotive.com, where the 76 Marks were also

28

2
Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

on display. *Id.* Defendants were also using the 76 Marks on social networking websites, Facebook and Yelp.com. *Id.* As of February 2, 2012, Defendants continued to display the 76 Marks on www.gonzalezautomotive.com and on various social networking websites. *Id.*

On February 3, 2012, Plaintiff filed a complaint for injunctive relief and damages against Defendants for violation of the Lanham Trademark Act, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"); the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"); and California common law. *See* ECF No. 1. Before the Court is Plaintiff's *ex parte* application for TRO and preliminary injunction filed on the same date. *See* ECF No. 4. This case was reassigned to the undersigned judge on February 7, 2012. ECF No. 18.

## II.   LEGAL STANDARD

An *ex parte* TRO may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). A request for a TRO is evaluated by the same factors that generally apply to a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, a TRO, like a "preliminary injunction[,] is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A district court should enter a TRO only "upon a clear showing that the plaintiff is entitled to such relief." *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008).

A party seeking a TRO based on trademark infringement must establish the following four elements: (1) that the party is likely to succeed on the merits; (2) that the party is likely to suffer irreparable harm absent a TRO; (3) that the balance of equities tips in the moving party's favor; and (4) that the TRO is in the public interest. *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citing *Winter*, 555 U.S. at 20). As the Ninth Circuit has stated: "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A [movant] must do more than merely allege imminent harm sufficient to establish standing; a [movant] must demonstrate immediate threatened injury as a prerequisite to

3

Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Previously in trademark cases, a plaintiff was entitled to a presumption of irreparable harm upon showing probable success on the merits. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000). However, in *Winter*, the Supreme Court held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, at 22. Thus, a plaintiff is no longer entitled to a presumption of irreparable harm on the ground that it has shown a likelihood of success on the merits. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999 (9th Cir. 2011).

Accordingly, a party seeking a TRO based on alleged trademark infringement must now independently establish each of the four elements of the *Winter* test, including that the party is likely to suffer irreparable harm absent a TRO. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### III.   DISCUSSION

The Court DENIES Plaintiff's *ex parte* application for a TRO because Plaintiff fails to show that "*immediate* and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*." Fed. R. Civ. P. 65(b)(1)(a)(emphasis added). Even if this were not an *ex parte* application, however, the Court would deny the application for failure to meet each of the four *Winter* factors. Given that Plaintiff fails to "clearly show" that it is likely to suffer immediate and irreparable harm absent a TRO, the Court "need not address the remaining [*Winter*] factors . . . ." *Amylin Pharms. Inc. v. Eli Lilly and Co.*, No. 11-55939, 2011 WL 5126999, at *3 (9th Cir. Oct. 33, 2011).

Plaintiff relies on overruled case law in arguing that once it has established a likelihood of confusion, irreparable harm is presumed. *See* Mem. at 17 (citing *GoTo.com*, 202 F.3d at 1204-05; *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987)). To show irreparable

4
Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

harm, Plaintiff offers no other evidence or arguments aside from the contention that "it is axiomatic that Defendants' misuse [of the 76 Marks] has caused [Plaintiff] to lose control over its reputation in the marketplace." *Id.* As discussed above, post-*Winter*, this approach is no longer permissible in the Ninth Circuit. *See Flexible Lifeline Sys.*, 654 F.3d at 999. To meet the "irreparable harm" requirement, Plaintiff must do more than "merely allege imminent harm"; Plaintiff "must *demonstrate*" it. *Caribbean Marine Servs.*, 844 F.2d at 674 (emphasis in original). Accordingly, the Court finds that Plaintiff's conclusory statement, without citation to any evidence, is insufficient to make a "clear showing" that the threatened harm is immediate and irreparable. *Winter*, 555 U.S. at 21.

Moreover, Plaintiff's delay in filing its complaint and *ex parte* application for a TRO further undermines Plaintiff's allegation of irreparable harm. Plaintiff was first aware of the alleged trademark infringement as early as June 27, 2011. TRO Appl. 3. By July 5, 2011, it was apparent that Defendants were not cooperating with Plaintiff. *See id.* at 4. Plaintiff then waited another two months, until September 2011, to reinitiate communications with Defendants. *Id.* Plaintiff was aware that the alleged trademark infringement continued in December 2011, *id.* at 5, yet Plaintiff waited until February 3, 2012, to file its complaint. Although the Court appreciates Plaintiff's efforts to resolve this matter through negotiation, Plaintiff's delay in seeking a TRO and preliminary injunction "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1122 (W.D. Wash. 2006) ("[Plaintiff's] decision to delay approximately one year before bringing this motion contradicts its suggestion that it is suffering urgent, continuing, and irreparable harm"). That Plaintiff could wait eight months since becoming aware of the alleged trademark infringement before filing its *ex parte* application implies Plaintiff can wait until Defendant has an opportunity to be heard.

Thus, Plaintiff has not made a "clear showing" that it is likely to face "immediate" and "irreparable harm" in the absence of a TRO, *Winter,* 555 U.S. at 21; *Caribbean Marine Servs.*, 844 F.2d at 674, let alone that it will face "immediate and irreparable injury . . . before [Defendants]

5
Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

can be heard in opposition." Fed. R. Civ. P. 65(b)(1). Failure to show irreparable harm alone is sufficient to deny Plaintiff the extraordinary and drastic remedy of an *ex parte* TRO. *See Amylin Pharms.*, 2011 WL 5126999, at *3. Accordingly, Plaintiff's *ex parte* application for a TRO is DENIED.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES, without prejudice, Plaintiff's *ex parte* application for a TRO and preliminary injunction. Plaintiff may obtain a hearing date from the Courtroom Deputy and file a motion for a preliminary injunction pursuant to Civil Local Rule 7. In the meantime, the parties are encouraged to resolve this matter without Court intervention.

**IT IS SO ORDERED.**

Dated: February 17, 2012

_____
LUCY H. KOH
United States District Judge

6
Case No.: 5:12-cv-00576-LHK
ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION